**E-FILED**
Tuesday, 01 November, 2005  03:57:47 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DEBORAH R. SULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04-3039 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF | ) | |
| PUBLIC AID, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

NOW COMES Defendant, THE ILLINOIS DEPARTMENT OF PUBLIC AID, by and through its attorney, Lisa Madigan, Attorney General for the State of Illinois, and for its Motion for Summary Judgment and Memorandum in Support states as follows:

**INTRODUCTION**

Ms. Sullins claims she was subjected to sexual harassment because she is a female, based upon her overhearing numerous comments and when several vulgar comments were directed at her.  Defendant is entitled to summary judgment for at least two reasons.  First, the record shows that Ms. Sullins was not put to a disadvantage because of her gender as the alleged harasser is a boorish individual who directed vulgarities at everyone, male and female alike.  Second, to the extent any of the conduct complained of was based on Ms. Sullins' gender, the conduct was not sufficiently severe or pervasive to create a hostile work environment.

Ms Sullins also claims she was retaliated against because she opposed sexual harassment.  Defendant is entitled to summary judgment on this claim for several reasons. First, Ms. Sullins was not subjected to an adverse employment action.  Second, Ms. Sullins

did not engage in a protected activity because none of the complained of conduct was based upon her gender and therefore was not prohibited by Title VII.  Third, even if Ms. Sullins' activity was protected and she was subjected to an adverse employment action, Ms. Sullins can present no evidence of a link between any protected activity and any adverse employment action.  Finally, Ms. Sullins cannot point to a similarly situated employee who did not oppose sexual harassment and was treated better than Plaintiff.

**APPLICABLE LAW**

    **A.**    **Summary Judgment Standard**

Summary judgment shall be granted if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment.  <u>Adickes v. S.H. Cress & Company</u>, 398 U.S. 144, 158-159 (1970).  In ruling on a motion for summary judgment, a district court must decide, based upon the evidence of record, whether there is any material disputed fact that requires a trial.  <u>Waldridge v. American Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir. 1994).

The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp.</u>, 477 U.S. at 322.  Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment.  <u>Michas v. Health Cost Controls of Ill., Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The non-moving party may not rely on the mere allegations of the complaint, but must present specific facts showing that a genuine issue of material fact exists.  <u>Gonzalez</u>

2

v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1031 (7th Cir. 1998). Summary judgment is the "put up or shut up" moment in a lawsuit and plaintiff must show what evidence plaintiff has in support of her claims. Johnson v. Cambridge Industries, 8. 325 F.3d 892, 901 (7th Cir. 2003).

### B. Title VII - Sexual Harassment

Sexual harassment has been defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." Meritor Savings Bank v. Vinson, 477 U.S. 57, 65 (1986). Two types of sexual harassment are actionable under Title VII. *See* Burlington Industries v. Ellerth, 524 U.S. 742, 752 (1998); Faragher v. Boca Raton, 524 U.S. 775 (1998). The first type, "tangible action" claims, are those in which the harassment "culminates in a tangible employment action." *See* Ellerth, 524 U.S. at 765. For example, a tangible employment action occurs when an employee is demoted for failing to submit to the sexual demands of her superior. *See* Id. at 758-63.

The second types of cases are those in which, although no tangible employment action was taken, the harassment creates a hostile and abusive work environment. Hostile environment sexual harassment violates Title VII if it is so severe or pervasive that it alters the terms and conditions of the victim's employment. *See* Meritor, 447 U.S. at 67. However, "Title VII . . . was not designed to purge the workplace of vulgarity, for a certain amount of vulgar banter, tinged with sexual innuendo is inevitable in the modern workplace, particularly from coarse and boorish workers." Gleason v. Mesirow Financial Inc., 118 F.3d 1134, 1144 (7th Cir. 1997).

A plaintiff claiming sexual harassment based upon a hostile work environment must establish that: "(1) she was subjected to unwelcome sexual advances, requests for sexual

favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability." Rhodes v. Illinois Department of Natural Resources, 359 F.3d 498, 505 (7th Cir. 2004). To establish a claim of sexual harassment based upon a hostile work environment, a plaintiff must show that the conduct at issue is sufficiently severe or pervasive that a reasonable person would find it hostile and that the victim herself subjectively sees it as abusive. Wolf v. Northwest Indiana Symphony Society, 250 F.3d 1136, 1143 (7th Cir. 2001). In determining whether conduct rises to this level, one must consider "the totality of the circumstances, including but not limited to the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1999). (*See also* Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446 (7th Cir. 1994)(Isolated and innocuous incidents will not support a hostile environment claim). The 7th Circuit has recognized a "safe harbor" for conduct that "is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996). Moreover, multiple incidences of improper conduct spread out over a period of time are not sufficient to establish that the conduct is so pervasive so as to alter the conditions of employment. McKenzie v. Illinois Dept. of Transp., 92 F.3d 473 (7th Cir. 1996).

An actionable claim of hostile work environment is one that is "hellish." Baskerville v. Culligan International Company, 50 F.3d 428 (7th Cir. 1995). The plaintiff in Baskerville alleged that she had been sexually harassed by her supervisor over a seven month period. Id. The Baskerville Court held that the plaintiff could not establish an objectively severe environment even though the plaintiff's supervisor had: called her a "pretty girl"; grunted "um um um" when the plaintiff wore a leather skirt to the office; told the plaintiff that her presence made the office "hot"; suggested that all "pretty girls," a category that presumably included the plaintiff, "run around naked"; told the plaintiff that he left the company Christmas party early because he "didn't want to lose control" at the sight of "so many pretty girls"; and suggested to the plaintiff that the solitary vice was his chief consolation in his wife's absence. Id. at 430.

### 1.   Gender based

"[B]ecause Title VII is premised on eliminating *discrimination*, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." Holman v. Indiana, 211 F.3d 399, 403 (7th Cir. 2000) (emphasis in original). "A prima facie case of sexual harassment . . . requires a showing that, but for the plaintiff's sex, he or she would not have been the subject of harassment." Pasqua v. Metropolitan Life Insurance Co., 101 F.3d 514, 517 (7th Cir. 1996). The critical issue in a hostile work environment case is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998). In a Title VII sexual harassment case, the court must look at all of the evidence of harassment, "and then determine whether the evidence as a whole creates a reasonable inference that the plaintiff was discriminated against because of his [or her] sex." Spearman v. Ford Motor

Co., 231 F.3d 1080, 1085 (7th Cir. 2000).  Moreover, "workplace harassment, whatever the gender of the persons involved, does not automatically constitute sex discrimination 'merely because the words used have sexual content or connotations.'"  Sheperd v. Slater Steels Corp., 168 F.3d 998, 1008 (7th Cir. 1999) *quoting* Oncale, 523 U.S. at 80 ; *see also* Rizzo v. Sheahan, 266 F.3d 705, 712-713 (7th Cir. 2001) (Plaintiff did not state claim for sexual harassment based on graphic comments by supervisor that he would like to have sexual intercourse with her 15 year old daughter; the comments were not made because of plaintiff's gender but rather because of animosity of supervisor towards plaintiff's husband).  An employer cannot be held liable for creating or condoning a hostile working environment unless the hostility is motivated by gender.  *See* Heuer v. Weil-McLain, 203 F.3d 1021, 1024 (7th Cir. 2000).

"Title VII does not cover the 'equal opportunity' or 'bisexual' harasser, then, because such a person is not *discriminating* on the basis of sex.  He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)."  Holman, 211 F.3d at 403 (emphasis in original).  In Holman, a husband and wife filed a Title VII sexual harassment action alleging that their supervisor had solicited sex from each of them.  Because the complaint alleged that the supervisor solicited sex from both a man and a woman, neither the man nor the woman "was subjected to disadvantageous terms or conditions of employment to which members of the other sex were not exposed."  Id. at 405.  Because of this, the 7th Circuit held that the plaintiffs did not have a claim under Title VII as a matter of law and affirmed the dismissal of the complaint.  Id. at 406 *see also* Shafer v. Kal Kan Foods, Inc., 417 F.3d 663, 666 (7th Cir. 2005) (Summary judgment properly granted in favor of employer where harasser "picked on anyone of either sex he

could get away with tormenting" and plaintiff could not establish that the harassment "reflected more than personal animosity or juvenile behavior.")

A Title VII hostile work environment claim cannot be based on the behavior of "rude individuals who treat everyone poorly." Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 976 (7th Cir. 2004). In Wyninger, the 7th Circuit upheld the district court's granting of summary judgment for the employer on the Plaintiff's Title VII sexual harassment claim because other employees, including men, were offended by the behavior of the two supervisors in questions and the supervisors "did not interact with [plaintiff] any differently than they did with other male coworkers and subordinates." Id.

Harassment which is motivated by a desire to retaliate for previous complaints of sexual harassment are not actionable as sexual harassment under Title VII. Berry v. Delta Airlines, Inc., 260 F.3d 803, 809 (7th Cir. 2001). In Berry, the plaintiff had complained about the sexually harassing behavior of Causevic, a co-worker. After this complaint was made, plaintiff experienced a campaign of what she called sexual harassment from Causevic and other employees. This campaign included plaintiff being called a "bitch", employees joking that they had to watch a sexual harassment video because of plaintiff, and employees being "rude and uncooperative" towards plaintiff, making it difficult for her to perform her job. Id. at 806-807. The district court granted summary judgment for the employer. The 7th Circuit affirmed because the post-complaint incidents "while unfortunate, are not actionable as sexual harassment under Title VII." Id. at 809. "Even taken in the light most favorable to [plaintiff], the evidence presented suggests that all of the claimed instances of post-complaint harassment were meant as retaliation for [plaintiff's] having complained about Causevic's prior sexual harassment, and were not motivated by any anti-female animus."

Harassment which arises due to conflicts over work issues or personal animus is not actionable sexual harassment under Title VII. <u>Spearman</u>, 231 F.3d at 1085. In <u>Spearman</u>, the harassers used sexually explicit and vulgar insults to express their anger at plaintiff over work-related conflicts. <u>Id.</u> Because the comments were made because of work-related conflicts and not because of the plaintiff's gender, the 7th Circuit found that the conduct did not constitute sexual harassment and upheld the grant of summary judgment for the employer. <u>Id.</u> *See also* <u>Johnson v. Hondo Inc.</u>, 125 F.3d 408, 412-413 (7th Cir. 1997) (Plaintiff (a male) failed to raise an issue of fact as to whether co-worker harassed him because of his gender where co-worker (also male) repeatedly told plaintiff "I'm going to make you suck my dick" while touching himself as if masturbating through his clothes. Court found harassment was based on "personal grudge match between two workers rather than a case of sexual harassment." Summary judgment for employer affirmed.)

Even if the harasser uses gender specific terms, there is no automatic inference that the harassment was motivated by gender rather than personal dislike unrelated to gender. *See* <u>Galloway v. General Motors Service Parts Operations</u>, 78 F.3d 1164, 1168 (7th Cir. 1996) (Co-worker calling plaintiff "sick bitch" and saying "suck this bitch" while making an obscene gesture was not based upon gender but rather was based on a personal dislike unrelated to gender. Summary judgment in favor of employer affirmed.) *overruled in part on other grounds in* <u>National Railroad Passenger Corp. V. Morgan</u>, 536 U.S. 101 (2002) *see also* <u>Hedberg v. Rockford Stop-N-Go, Inc.</u>, 1999 WL 301677 (N.D. Ill. 1999) *affirmed by* 202 F.3d 273 (7th Cir. 1999) (Plaintiff failed to provide any evidence that coworker calling her "fat fucking white bitch" and repeatedly saying "fat white bitch" while spitting in her face was based on gender or race of plaintiff. Summary judgment for employer affirmed.)

Harassment motivated by sexual preference also is not sexual harassment.  Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, 1062 (7th Cir. 2003) ("The protections of Title VII have not been extended, however, to permit claims of harassment based on an individual's sexual orientation.")   "Title VII is not a 'general civility code' for the workplace [citation omitted]; it does not prohibit harassment in general or of one's homosexuality in particular."  Spearman, 231 F.3d at 1086.  In Spearman, the plaintiff was harassed because of his apparent homosexuality.  Specifically, plaintiff was referred to as a "bitch", was subjected to graffiti stating that he was "gay" and a "fag", and was compared to a drag queen.  Id. at 1086.  The 7th Circuit found that this conduct confirmed that the harassment was motivated by hostility towards the plaintiff's sexual orientation and not to his sex, and, therefore, his hostile environment claim failed.  Id.  see also Hamm, 332 F.3d at 1062 (Summary judgment properly granted in favor of employee where harassment was related to disapproval of plaintiff's work performance and perceptions of plaintiff's sexual orientation.); Hamner v. St. Vincent Hospital, 224 F.3d 701, 704 (7th Cir. 2000) ("Harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII.")

### 2.   Second Hand Harassment

Although incidents of harassment directed at third parties in the presence of plaintiff have "some relevance" in demonstrating the existence of a hostile work environment, "the impact of this second hand harassment is obviously not as great as the impact of harassment directed at the plaintiff."  Gleason, 118 F.3d at 1144.  Moreover, a plaintiff claiming second hand harassment still must demonstrate that she was placed at a disadvantage because of her gender.  Id. at 1145.  In Gleason, the plaintiff claimed that her supervisor referred to female customers as bitchy or dumb, ogled other female

9

employees, flirted with Gleason's female relatives, and commented on the anatomy of one of Gleason's co-workers.  Id. at 1144-1145.  In upholding the district court's granting of summary judgment for the employer, the Seventh Circuit found that "a reasonable person would [not] conclude that she was at a disadvantage vis a vis her male coworkers because of her sex, particularly as the record reveals that both male and female employees . . . objected to Novak's overbearing and abusive manner and his talking down to desk employees."  Id.

### C.    Retaliation

Title VII not only protects persons from certain forms of job discrimination and harassment, but also from retaliation for complaining about prohibited discrimination.  *See* 42 U.S.C. §2000e-3(a); Sitar, 344 F.3d at 727.  A plaintiff can prove retaliation either using direct evidence or under the McDonnell-Douglas framework.  Stone v. City of Indianapolis, 281 F.3d 640, 644 (7th Cir. 2002).  Under the direct method, a plaintiff must show that she engaged in protected activity, that she suffered an adverse employment action as a result, and that a causal connection between the two exists.  Sitar, 344 F.3d at 728.

If no direct evidence exists, the plaintiff may prove retaliation by establishing a prima facie case pursuant to the "indirect method" as set forth in the McDonnell-Douglas case.  A plaintiff attempting to make a prima facie case of retaliation under the indirect method must show that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  Williams v. Waste Management of Ill., Inc., 361 F.3d 1021, 1031 (7th Cir. 2003); *see* Stone v. Indianapolis Public Utilities Division, 281 F.3d 640, 644 (7th Cir. 2002) ("the

10

adaptation of <u>McDonnell Douglas</u> to the retaliation context requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner.*")*  Under the indirect method, "'failure to satisfy any element of the prima facie case proves fatal to the employee's retaliation claim.'" <u>Roney v. Illinois Dept. of Transportation</u>, 2005 WL 1653567, (7th Cir. 2005) (*quoting* <u>Hilt Dyson v. City of Chicago</u>, 282 F.3d 456, 465 (7th Cir. 2002)).

Even where the plaintiff establishes a prime facie case of retaliation under the indirect method, if the employer presents unrebutted evidence of a non-invidious reason for the employment action at issue, the employer is entitled to summary judgment unless there is a material issue of fact as to whether the employer's non-invidious reason is pretextual.  <u>Hudson v. Chicago Transit Authority</u>, 375 F. 3d. 552, 559 (7th Cir. 2004). "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, and so long as the employer honestly believes those reasons, pretext has not been shown. [Citation omitted] Pretext means a dishonest explanation, a lie rather than an oddity or error." <u>Ballance v. Springfield</u>, 424 F.3d 614, (7th Cir. 2005).

### 1.    Protected Expression

Under either the direct or indirect framework, a plaintiff must demonstrate that she engaged in protected activity to prevail on a Title VII retaliation claim.  In order to qualify as protected expression under section 2000e-3(a), a complaint must involve discrimination that is prohibited by Title VII.  <u>Hamner</u>, 224 F.3d at 707 (Judgment as a matter of law properly granted where plaintiff complained of harassment based on his sexual preference, which is not prescribed by Title VII.)  To support a claim of retaliation, the underlying complaint "cannot be without legal foundation, but must concern  the type of activity that,

11

under some circumstances, supports a charge of sexual harassment. [citation omitted] "If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." Id. *see also* Hamm, 332 F.3d at 1066 (Plaintiff's retaliation claim failed because he could not show that the complained of harassment was because of his sex and therefore his complaint did not concern an employment practice that violated Title VII.)

### 2.    Adverse Employment Action

To demonstrate an adverse employment action that would support a Title VII retaliation claim, "[a]t minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." Haywood v. Lucent Tech., Inc., 323 F.3d 524, 532 (7th Cir. 2003). "An actionable employment action is one that is materially adverse, 'meaning more than a mere inconvenience or an alteration of job responsibilities." Hilt-Dyson v. Chicago, 282 F.3d 456, 465 (7th Cir. 2002) *quoting* Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 2001). "[N]ot everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996) *see also* Chisholm v. Foothill Capital Corp., 3 F. Supp.2d 925, 937 (N.D. Ill. 1998) (No adverse employment action for purposes of Title VII retaliation where supervisor made nasty phone call to plaintiff, excluded her from a golf outing, dinners, and a conversation, failed to return her phone calls as promptly as he once had, and implied she would be fired if her performance did not improve.); Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1039 (7th Cir. 1998) (Plaintiff being ostracized by fellow workers was not adverse employment action because employer did not instruct employees not to talk to plaintiff and there was no indication that the shunning resulted in material harm to plaintiff.)

An employee's request for a demotion, made to avoid discrimination, can constitute a constructive demotion, and therefore an adverse employment action, under certain circumstances. *See* Simpson v. Borg-Warner Automotive, Inc., 196 F.3d 873, 876 (7th Cir. 1999). A claim of constructive demotion is analyzed under the same structure as a claim of constructive discharge. Id. To establish a constructive demotion, the plaintiff must prove two things: that her working conditions were so intolerable that a reasonable person would have been compelled to resign and that the conditions were intolerable because of unlawful discrimination. Id. at 877. The standard for intolerable working conditions is even higher than the high standards for establishing a hostile workplace because an employee is expected to remain on the job while seeking redress. McPherson v. Waukegan, 379 F.3d 430, 440 (7th Cir. 2004).

The 7th Circuit has found intolerable working conditions where there has been physical injury and/or threats of physical harm. *See* Brooms v. Regal Tube Co., 881 F.2d 412, 423-424 (7th Cir. 1989) (Constructive discharge based on a series of escalating sexual remarks culminating in a physical assault and death threat.); *see also* Taylor v. Western & Southern Life Ins. Co., 966 F.2d 1188, 1191 (7th Cir. 1992) (The 7th Circuit found intolerable a work environment where a manager held a gun to an African-American employees head and circulated a picture saying "this is what a nigger looks like with a gun to his head."); Snider v. Consolidation Coal Co., 973 F.2d 555, 557 (7th Cir. 1992) (Constructive discharge based on a sexual relationship between an employee and a supervisor which led to a suicide attempt.)

In contrast, the 7th Circuit has found boorish behavior of coworkers, coupled with a discriminatory failure to promote, insufficient to create an intolerable work environment. Lindale v. Tokheim Corp., 145 F.3d 953, 956 (7th Cir. 1998) (In the context of a constructive

13

discharge) *see also* <u>Wolf v. Northwest Indiana Symphony Society</u>, 250 F.3d 1136, 1143 (7th Cir. 2001) (Harassing behavior of supervisor was "far from the extreme situation warranting a resignation as the only alternative to avoiding or overcoming an intolerable situation.)

**ARGUMENT**

**I.    Plaintiff was not subject to a hostile work environment**

**A.    Alleged conduct was not gender based**

The record demonstrates that Mr. Scheff, like the harassers in <u>Wyninger</u>, is "a crude individual who treats everyone poorly" regardless of gender.  In fact, the vast majority of the conduct Ms. Sullins complains of was comments Mr. Scheff made to men that Ms. Sullins merely overheard.  For example, Mr. Scheff told Mr. Sandidge that he would be less grouchy if his wife put out more.  The comments about Mr. Pfister were also made to men and were merely overheard by Ms. Sullins.  The record demonstrates that men were offended by Mr. Scheff.  Ms. Sullins testified that she heard Mr. Roberts and Mr. Sandidge yelling at Mr. Scheff to "shut up."  Male employees also complained to supervisors about Mr. Scheff's behavior.  In short, the record here, as in <u>Wyninger</u>, shows that Mr. Scheff did not interact with Ms. Sullins any differently than he did with male co-workers.

Many of the comments Ms. Sullins claims were directed at her were also directed at men.  For example, Mr. Scheff told everyone in the office, men and women, about the tree shaped like a penis and made the comment about pleasuring himself in a hotel to both men and women.  Other comments Mr. Scheff directed at Plaintiff were the result of workplace confrontations, including calling Ms. Sullins a "dike bitch", a "prude", and a "snitch" in a confrontation over how Ms. Sullins transferred calls to Mr. Scheff.  Mr. Scheff

14

also used crude language to express his opinion that women get promoted over men to Ms. Sullins as well as various other female and male employees.

None of the conduct Ms. Sullins complains of would indicate that the alleged harassment was based on her gender or that women were placed at a disadvantage compared to men. When Ms. Sullins overheard vulgar comments from her office, there is no reason to believe that the comments would not have been made if Ms. Sullins were a man. The comments directed at Ms. Sullins were also made to men, demonstrating that Ms. Sullins was not put in a less favorable position because of her gender. Ms. Sullins' own description of the context of the conversation in which Mr. Scheff called Ms. Sullins a "dike bitch", a "prude" and a "yes person" indicates that, like the comments in Spearman, the comments were based on a disagreement over office procedure (in this case the way phone calls were transferred) and not on Ms. Sullins' gender. While Mr. Scheff might have used different words to insult a male co-worker with whom he disagreed, the evidence in the record indicates that Mr. Scheff was just as abusive to men.

### B.    Harassment not severe and pervasive

Even if the Court were to find that a portion of the complained of conduct was based on Ms. Sullins' gender, that conduct was not sufficiently severe and pervasive to create the type of hellish environment necessary to establish a Title VII hostile work environment claim. Most of the complained of conduct could, at best, be described as second hand harassment because they were comments that Ms. Sullins merely overheard. While second hand harassment is relevant to claims of a hostile work environment (if the plaintiff can demonstrate that she was placed at a disadvantage because of her gender), its impact is "obviously not as great as harassment directed at the plaintiff." Gleason at 118 F.3d at

1144.  Moreover, Ms. Sullins admitted in her deposition that she could escape these comments by shutting her office door or wearing headphones.

The remainder of the complained of conduct is too tepid to reach to the level of a hostile work environment.  On one occasion, Ms. Sullins was told of a tree shaped like a penis; on another occasion, Mr. Scheff stated that he likes to pleasure himself after watching x-rated movies, Ms. Sullins was called a "prude, a bitch, a dike bitch, a yes person, and a snitch," and was that she would be promoted because she had a "pussy and not a penis."  Ms. Sullins was never propositioned for sexual favors, was never physically assaulted in any way, and was never subjected to comments about her anatomy.  Mr. Scheff's behavior, like the behavior in <u>Baskerville</u>, while undoubtedly annoying, was not severe or pervasive enough to create a hostile work environment.

## II.    Plaintiff was not retaliated against for opposing behavior prohibited by Title VII.

### A.    Plaintiff did not suffer an adverse employment action

Plaintiff's principle claim of retaliation revolves around her argument that she was constructively demoted.  However, the record demonstrates that Plaintiff was not demoted. While Ms. Sullins did bid on and receive a different position in April 2001, this new position did not constitute a demotion for Ms. Sullins.  Ms. Sullins' pay and benefits remained the same, and she did not suffer significantly diminished material responsibilities.  Because the new position was not a demotion, it was not a constructive demotion and therefore not an adverse employment action.

Furthermore, at the time she bid on the new position, Ms. Sullins was not subjected to conditions that were so intolerable that a reasonable person would have felt compelled to take a demotion to get away the environment.  Approximately one month before she bid

on the new position, Ms. Sullins was offered and accepted a new office on the first floor (she had been in the basement) which was farther away from Mr. Scheff's office. Less than a month prior to bidding on the new position, Ms. Sullins reported that things were going good and that she "loved being upstairs." After spending 11 days on the first floor, Ms. Sullins stated that she "experienced a positive change and improvement in my overall mental health and look forward to coming to work again."

From the time Ms. Sullins reported looking forward to coming to work until the time she requested the new position, the only alleged problems she noted in her diary were that Mr. Scheff gave her "red faced dirty looks" on two occasions, that a co-worker said Mark Scheff's name within Ms. Sullins' earshot, and that Mr. Scheff was standing with a group of people where he could "watch the door." This conduct was not sufficient to transform an environment which Ms. Sullins looked forward to coming to into an environment that the reasonable person would feel compelled to take a demotion to get away from. In relation to the reasonable person standard, it is worth noting that the record indicates that all of the employees Ms. Sullins worked with were exposed to this offensive behavior, no other employee quit or took a demotion to get away from Mr. Scheff.

Ms. Sullins also claims that the male employees stopped talking to the female employees, and that this was retaliation. However, for this to constitute an adverse employment action, Ms. Sullins would need to establish that the Department of Human Services instructed the male employees not to speak to the female employees and that Ms. Sullins was materially harmed by the failure of the men to talk to the women. *See* Parkins, 163 F.3d at 1039. There is nothing in the record to indicate that either of these conditions is true.

The alleged conduct of Ms. Sullins' supervisors, including allegations that the supervisors talked down to her, did not invite her to a social function, took questions to Ms. Sullins rather than directing employees to take questions to Ms. Sullins themselves, telling her she needed to "toughen up", and holding meetings that did not include Ms. Sullins, is also insufficient to constitute an adverse employment action. This conduct did not create a quantitative or qualitative change in the terms or conditions of Ms. Sullins' employment.

**B.    Plaintiff did not engage in protected activity**

As demonstrated above, the harassment that Plaintiff complained of was Scheff's use of vulgarity in the work place, directed at both men and women. Her complaint about workplace vulgarity did not involve discrimination that is prohibited by Title VII. Because the complained of conduct was not prescribed by Title VII, and she admits the statements were directed at males, any belief Ms. Sullins may have had that she opposed an unlawful practice was not reasonable, and she cannot state a cause of action for retaliation under Title VII. *See* Hamner, 224 F.3d 707; Hamm, 332 F.3d at 1066.

**C.    No link between any adverse employment action and any protected activity**

Even if Plaintiff could show a that she engaged in protected activity and suffered an adverse employment action, there is nothing in the record to indicate that, but for her complaint, the work place would have been different. Ms. Sullins testified she complained about Mr. Scheff's behavior since she started working with him. There is nothing in the record to indicate that these complaints were a substantial or motivating factor in any of the activity Ms. Sullins complains of. To the extent Ms. Sullins argues that she was retaliated against for talking to investigators in relation to Ms. Thallmans' complaint, it should be noted that Ms. Sullins, along with the male and female employees she worked

18

with, were ordered to speak with the investigator. It is incongruous that DHS would retaliate against Ms. Sullins for doing what she was ordered to do. In fact, because it is the unusual employer that would retaliate against an employee for following its orders, Defendant argues, as a matter of first impression, that Plaintiff should be required to meet a heightened standard to sustain this claim. *See* Mills v. Health Care Service Corp., 171 F.3d 450, 457 (7th Cir. 1999) (Because it is the unusual employer who discriminates against majority employees, white employee claiming race discrimination must meet a heightened standard under Title VII.)

### D.    No comparable employee treated better

Ms. Sullins cannot point to a similarly situated employee who was treated better than Ms. Sullins. To the extent Ms. Sullins claims that the retaliation was based on her speaking to the investigator, she would need to point to a similarly situated employee who did not speak to the investigator. However, all of the employees who worked with Mr. Scheff spoke to the investigator, as they were ordered to do. Therefore, there is no similarly situated employee who did not speak to the investigator.

To the extent Ms. Sullins claims she was retaliated against because of her complaints about Mr. Scheff, Ms. Sullins would need to point to a similarly situated employee who did not complain about Mr. Scheff and was treated better than Ms. Sullins. Here it should be noted that Ms. Sullins claims that she complained about Mr. Scheff since she began working with him. During the time she was complaining, Ms. Sullins was promoted ahead of her co-workers. Therefore, not only was she treated not worse than similarly situated employees, she was actually treated better than similarly situated employees. In fact, she was treated better than Mr. Scheff himself, who was not promoted. In addition, when Ms. Sullins complained of Mr. Scheff's behavior, Ms. Sullins was given

a new office on the first floor and Mr. Scheff was instructed not to go near Ms. Sullins' new area.  No other employee was given a new office to get away from Mr. Scheff.

**Conclusion**

Based upon the foregoing, Defendant is entitled to summary judgment as a matter of law.

WHEREFORE, Defendant respectfully requests that this Honorable Court grant summary judgment for Defendant and against Plaintiff on all counts of her Complaint.

Respectfully submitted,

ILLINOIS DEPARTMENT OF PUBLIC AID,

Defendant,

LISA MADIGAN, Attorney General,
State of Illinois

By:  s/ Thomas H. Klein
Thomas H. Klein, #6271653
Sarah R. Kerley, #6283449
Assistant Attorneys General
500 South Second Street
Springfield, Illinois  62706
Telephone:  (217) 785-4555
Facsimile:    (217) 524-5091
E-Mail:  tklein@atg.state.il.us.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2005, I electronically filed the foregoing Motion for Summary Judgment and Memorandum of Law with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James P. Baker
carenbakerlaw@sbcglobal.net

and I hereby certify that on November 1, 2005, I mailed by United States Postal Service, the document to the following non-registered participant:

None.

Respectfully submitted,

/s/ Thomas H. Klein

Thomas H. Klein, #6271653
Sarah R. Kerley, #6283449
Assistant Attorneys General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 785-4555
Facsimile:  (217) 524-5091
tklein@atg.state.il.us