**E-FILED**
Tuesday, 01 November, 2005  04:03:26 PM
Clerk, U.S. District Court, ILCD



# BUR/COMPREHENSIVE HEALTH SVCS (29-400)
### BILLING & PAYMENT
### FEBRUARY 16, 2001

**SR PUBLIC SER ADM (OPT.1)**
STEVEN BRADLEY
40070-33-29-000-00-61    *

**BILLING & PAYMENT**

**SR PUBLIC SER ADM (OPT.1)**
CHERYL BECKNER  *wF*
40070-33-29-400-00-61    *

*Hospice*                    *physician ambulance DME equip.*

**UNIVERSAL BILLING**

PUBLIC SERV ADMIN (OPT.6)
JODIE EDMONDS  *wF* 40
37015-33-29-410-00-61    *

**NIPS BILLING**

SR PUBLIC SER ADM (OPT.1)
KAREN DANIELS  *wF*
40070-33-29-420-00-61
(SEE CHART 29-420)

**OFFICE COORDINATOR (2)**
STEPHANIE RAY
30025-33-29-410-10-61

**EXECUTIVE II**
DEBORAH SULLINS  *wF* 43
13852-33-29-410-20-61

**HOSPITAL/HOSPICE/RENAL/**
**HEMOPHILIA/SEXUAL ASSUALT**

EXECUTIVE II
MARVIN ROSS  *w/M* 37
13852-33-29-411-00-61

**HOSPITAL/HOSPICE/RENAL/**
**HEMOPHILIA/SAET/ASTC SVCS**

EXECUTIVE II
LENNA DEGROOT  *wF* 47
13852-33-29-412-00-61

**MEDICAL ASST CONSLT II**
P ████████  *wF* 44
PATRICIA LUTTRELL  *wF* 44
KEVIN MAYER  *wM* 3█
MICHAEL SANDIDGE  *wM* 34
MARK SCHEFF  *wM* 4█
26502-33-29-411-20-61

**MEDICAL ASST CONSLT II**
VELVA FLETCHER  *wF*    *left FH 3-11-01 for other state pos. promotion*
JOSEPH ROBERTS  *wM* 4█
JAMES SCHUH  *wM* 38
26502-33-29-412-20-61

*Mary [Stailover] — took promotion to [PSD]. to MOA . . . from MAC II  eff. 2-16-0C*

*Mary [Stailover]  wF  43*

**\*RUTAN EXEMPT**

*[handwritten notes]*
*eff [2-11-01]*

29-400.0PX

**EXHIBIT**

B

*Sv. Bingert  MAC III  wF*

000338

7/12/05
Steve Bradley

Sullins v. Illinois Department of Public Aid

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE CENTRAL DISTRICT OF ILLINOIS

3                  SPRINGFIELD DIVISION

4

5    DEBORAH R. SULLINS,

6              Plaintiff,

7        vs.                          No. 04-3039

8    THE ILLINOIS DEPARTMENT OF PUBLIC
     AID,
9
                 Defendant.
10

11

12        THE DEPOSITION of STEVE BRADLEY, taken in

13   the above-entitled case before Rhonda K. O'Neal,

14   CSR, RPR, a Notary Public of Sangamon County,

15   acting within and for the County of Sangamon,

16   State of Illinois, at 1:35 o'clock P.M., on July

17   12, 2005, at 415 South Seventh Street,

18   Springfield, Sangamon County, Illinois, pursuant

19   to notice.

20

21

22

          BALDWIN REPORTING & LEGAL-VISUAL SERVICES
23           SERVING ILLINOIS, INDIANA & MISSOURI
          24 hrs (217) 788-2835  Fax (217) 788-2838
24                    1-800-248-2835

**EXHIBIT**

C

COPY

Page 1

1                S T I P U L A T I O N

2              It is stipulated and agreed, by and
        between the parties hereto, through their
3       attorneys, that the deposition of STEVE BRADLEY
        may be taken before Rhonda K. O'Neal, a Notary
4       Public, Certified Shorthand Reporter, and
        Registered Professional Reporter, upon oral
5       interrogatories, on the 12th of July A.D., 2005,
        at the instance of the Plaintiff at the hour of
6       1:35 o'clock P.M., 415 South Seventh Street,
        Springfield, Sangamon County, Illinois;

7

8              That the oral interrogatories and the
        answers of the witness may be taken down in
        shorthand by the Reporter and afterwards
9       transcribed;

10             That all requirements of the Federal Rules
        of Civil Procedure and the Rules of the Supreme
11      Court as to dedimus, are expressly waived;

12             That any objections as to competency,
        materiality or relevancy are hereby reserved, but
13      any objection as to the form of question is waived
        unless specifically noted;

14

15             That the deposition, or any parts thereof
        may be used for any purpose for which depositions
        are competent, by any of the parties hereto,
16      without foundation proof;

17             That any party hereto may be furnished
        copies of the deposition at his or her own
18      expense.

19

20

21

22

23

24

                           Page 4

1    investigate her complaints?

2        A    No.

3        Q    Did you talk with Mr. Scheff about the

4    complaints she had in her new location?

5        A    I don't recall if we had a, if Mr. Scheff

6    and I had a conversation about that.

7        Q    What was the circumstance for Debbie

8    moving to the first floor?

9        A    Gosh.  I wish I had a memory like I used

10   to.  I don't recall if it was continuing to remove

11   her from the place where Mr. Scheff had, had daily

12   contact or what the reasoning was but, or whether

13   there was not office space on the first floor when

14   this first happened, but regardless, we moved her

15   to get her further out of harm's way.

16       Q    Okay.  So she was moved to the first

17   floor to give her more distance from Mr. Scheff?

18       A    Right.  That's correct.  There is, on

19   any given day or daily basis, there is no reason

20   Mr. Scheff has business on the first floor in that

21   part of the building.

22       Q    All right.  For those of us that don't go

23   to the Bloom Building on a daily basis, can you

24   tell me where Debbie's work location was on the

Page 56

1    glaring was on the first floor or in the basement

2    after the initial move, I don't recall the timing.

3    But I don't--trying to remember if she did make an

4    allegation again that he was in that area for no

5    reason.  I don't recall.

6        Q    Now, when Debbie was relocated to the

7    first floor, was Mr. Scheff instructed that he was

8    to stay away from that particular location?

9        A    Yes.  That I know for certain was a

10    verbal conversation I had with him.

11        Q    So you told him that Debbie was going to

12    an office on the first floor, and he was forbidden

13    from going into that area?

14        A    There was absolutely no reason on a daily

15    basis that he needs to be in that part of the

16    building.  Break room is in the other direction,

17    and the door is right through the middle.

18        Q    Okay.  And that was made at or prior to

19    the time Debbie went to the first floor?

20        A    That's correct.

21                    (Whereupon a document

22                    was duly marked for

23                    purposes of

24                    identification as

Page 58

1              Exhibit Number 13 as of

2              this date.)

3       THE DEPONENT:  Okay.  So I put it in writing.

4       MR. BAKER:  Q  Go ahead and review that

5    document.

6       A    Okay.

7            Okay.

8       Q    Can you identify Exhibit 13 for us,

9    please?

10      A    Yes.  It's an e-mail I sent to Mr. Scheff

11   on March 28 basically indicating to him again my

12   instructions not to be on the first floor anywhere

13   close to Ms. Sullins' area.

14      Q    Now, that was after Ms. Sullins had been

15   on the first floor?

16      A    I believe that's correct.  The timing is

17   about right, yes.

18      Q    Okay.  And as I'm going through this, I'm

19   operating on the premise that someone had told you

20   that Mark had been on the first floor on the east

21   side of the Bloom Building?

22      A    That's correct.

23      Q    Do you recall who told you that?

24      A    I'm quite certain Deb was one of them,

Page 59

1    to a program under Cindy Cox?

2        A    That's correct.

3        Q    Was there any opportunities for positions

4    under Cindy Cox?

5        A    There was nothing available at the time.

6        Q    Okay.  And then she asked for an open MOA

7    I?

8        A    MOA 1.

9        Q    MOA 1?

10       A    Right.  That's a management operations

11   analyst I.

12       Q    Is that a higher or a lower position than

13   the one Debbie had?

14       A    I'm not well versed on the personnel

15   code, but I believe it was a reduction, although

16   it probably would not have cost her any money.

17       Q    Okay.  After receiving this e-mail, did

18   you ever talk with Debbie about the subject she

19   was raising in it?

20       A    To be honest with you, I don't recall.

21   I'm sure we did because I pursued the transfer

22   under Alberta.

23       Q    Where did Alberta Lebbon's (sp) unit

24   work?

Page 62

03/23/01

Took some Collins vs Bradley files down to Steve Bandy. He asked me how it was going. I said it going good. I loved being upstairs.

Steve said he was concerned that I was being ostracized by my unit, my peers and my supervisors. I told him that I was. That I had been moved upstairs by my choice to get out of a bad environment but that my contact with my section was very little.

I briefly told him there had been a investigation and that there were five of us who had testified against someone in the section. Out of the five, two had promoted, one transferred and two of us were trying to get out of the unit. That the hostility was overwhelming.

**EXHIBIT**

D

SullinsPA00012

| | |
|---|---|
| **From:** | Deborah Sullins |
| **To:** | Derrick Moscardelli |
| **Date:** | Tue, Mar 27, 2001  9:03 AM |
| **Subject:** | Complaint |

Since the Mark Scheff investigation I have been subject to harassment, intimidating behavior by Mark Scheff, Jim Schuh, Jodie Edmonds, Lenna DeGroot and Marvin Ross.

Mark would either make veiled threats to other staff which were relayed to me or he would loudly make comments of a threatening manner outside my office or outside his when I walked past. When brought up to management's (Edmonds, DeGroot and Ross) no action was taken. My work environment has become hostile for me.

On 01/29/01 at 4:45 pm in the afternoon I asked Edmonds could be moved to another office. She told me no that they had enough problems now controlling him and getting him to work it would be worse in a private office. I asked about detailing him upstairs as a NIPS Mac and she told me she didn't think it would be possible nor was she open to it.

On 03/13/01 I requested to Steve Bradley that I be transferred in his Bureau to a different section, or given the MOAI in a different building as I wanted to get away from the management team, Schuh and Scheff. On 03/14/01 we came to the arrangement that I would stay in the same job till something came along but that I would relocate to the first floor of the Bloom Building. I was thrilled and felt like a ton of weight was lifted because I did not have to see Mark every day.

I have been on the first floor since 03/16/01 and I experienced a positive change and improvement in my overall mental health and look forward to coming to work again. Unfortunately, since 03/16/01 Scheff, for reasons unknown has been allowed to leave his work area, at different times throughout the day to walk and walk past my work area. Scheff does not speak, nor do I but his "dirty" and "mean spirited" looks jolt me to the point of fear. Scheff's appearance (walking by my desk, door or standing right outside my desk area) intimidates me and continues to foster/maintain a hostile work environment. I have all the dates and times documented as to when he is in my area. (This documentation has also been given to Jan Johnson)

Yesterday 03/26/01 Shari Bangert, MACIII, witnessed Scheff walk by my area and give me a "dirty" look. Prior to Scheff being seen, he said, "we'll see who wins". I interpret this as Scheff being upset that I filed a Human Rights Complaint against him, Schuh, Edmonds, DeGroot and Ross. His comment, along with previous comments made, leave me to believe he has singled me out to retaliate against (suing me, suing my girlfriend).

I asked to be relocated to get away from these individuals, but Scheff clearly seeks me out. His mere presence scares me to the point of being sick to my stomach and unable to think clearly. I fear escalated retaliatory actions from him. There is no reason for Mark to walk by or near my work area. There are several alternative routes he could take. Once again leaving me to believe this is part of his actions to intimidate, retaliate, and harass me.

Edmonds, DeGroot and Ross have also contributed to Scheff's actions and behavior of creating and maintaining the hostile work environment I am subject to.

I am asking that this matter is looked in to, as the hostile work environment is a direct result of the sexual harassment investigation initiated by Mary Thallman. This is further by the fact that Scheff has singled me out based upon my sexual orientation. To my knowledge he has not treated other women in the unit in to this degree and intent.

Thank you for your assistance in this matter.
Debbie Sullins



**EXHIBIT**

E

SullinsPA00015

From:       Steve Bradley
To:         Mark Scheff
Date:       3/28/01 9:27AM
Subject:    Notice

Mark-
It has come to my attention that you have recently been on the 1st floor, east side of the Bloom Building.
According to persons in that area, this is highly unusual. I've heard this from several different people.

This is to advise you that under no circumstances are you to be on the east side of the Bloom Building, 1st
floor until further notice. If there are persons there you wish to see, please make arrangements, via
telephone to meet in a place other than the east side of the first floor. Breaks are to be taken either in the
breadroot, outside or at your desk. You have no official business on that floor, that side of the building.

I trust I'm making myself clear on this. If you have any questions about this directive, please see Jodie,
Cheryl or myself.

sjb

CC:              Carole Luttrell; cb; Derrick Moscardelli; Janice Johnson; Jodie Edmonds; Roni
Kaluza; Steve Bradley



**EXHIBIT**

F

00033

7/18/05
Lenna Degroot

Sullins vs. Illinois Dept. of Public Aid

1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF ILLINOIS

3              SPRINGFIELD DIVISION

4    DEBORAH R. SULLINS,

5          Plaintiff,

6      vs.                          No. 04-3039

7    THE ILLINOIS DEPARTMENT OF PUBLIC
     AID,

8          Defendant.

9

10

11          THE DEPOSITION of LENNA DEGROOT, taken in

12   the above-entitled case before Julie A. Brown, a

13   Certified Shorthand Reporter of Christian County,

14   acting within and for the County of Sangamon, State

15   of Illinois, at 3:00 o'clock P.M., on July 18,

16   2005, at 415 South Seventh Street, Springfield,

17   Sangamon County, Illinois, pursuant to notice.

18

19

20

21

22
             Baldwin Reporting & Legal-Visual Services
23               Serving Illinois, Indiana & Missouri
             24hrs (217)788-2835    Fax (217)788-2838
24                    1-800-248-2835

**EXHIBIT**

G

COPY

Page 1

Sullins vs. Illinois Dept. of Public Aid

```
 1              S T I P U L A T I O N

 2              It is stipulated and agreed, by and
        between the parties hereto, through their
 3      attorneys, that the deposition of LENNA DEGROOT may
        be taken before Julie A. Brown, a Certified
 4      Shorthand Reporter, upon oral interrogatories, on
        the 18th of July A.D., 2005, at the instance of the
 5      Plaintiff at the hour of 3:00 o'clock P.M., 415
        South Seventh Street, Springfield, Sangamon County,
 6      Illinois;

 7              That the oral interrogatories and the
        answers of the witness may be taken down in
 8      shorthand by the Reporter and afterwards
        transcribed;

 9
                That all requirements of the Federal
10      Rules of Civil Procedure and the Rules of the
        Supreme Court as to dedimus, are expressly waived;

11
                That any objections as to competency,
12      materiality or relevancy are hereby reserved, but
        any objection as to the form of question is waived
13      unless specifically noted;

14              That the deposition, or any parts thereof
        may be used for any purpose for which depositions
15      are competent, by any of the parties hereto,
        without foundation proof;

16
                That any party hereto may be furnished
17      copies of the deposition at his or her own expense.

18

19

20

21

22

23

24

                          Page 4
```

7/18/05                Sullins vs. Illinois Dept. of Public Aid
Lenna Degroot



```
1        A     Yes.   I'm assuming that's what she's
2    referring to.
3        Q     How was that a well known--
4        A     Mark was not quiet about the fact that he
5    thought that men, you know, that women just got
6    promoted more often in that bureau over men.  You
7    know, because he made a comment to me at the time I
8    got my job that he thought mine was deserved
9    because I had worked my way up through the ranks,
10   but he had just, you know, he said he would, you
11   know, that, and I know I've heard this through
12   conversations, you know, that he had made comments
13   that he didn't feel like men were promoted as
14   fairly as women were.
15       Q     So he made those comments to you?
16       A     Yes.
17       Q     And you also heard from others that he
18   had made comments to them?
19       A     Well, I don't, I don't remember.  I mean
20   I'm going on the assumption that since it's here
21   that yes, but I don't remember.
22       Q     Okay.  I just want you to do the best you
23   can to recall.
24       A     Yes.  Yes, but I'm sure, yes, Mark made
```

Page 42

7/18/05
Lenna Degroot

Sullins vs. Illinois Dept. of Public Aid



1   no secret that he felt like men did not get fair

2   promotions around there.

3       Q   Okay.  I'm trying to make sure I

4   understand this and it may be a punctuation

5   problem.  If you go to page 2 the third line down

6   you see there's a semicolon?

7       A   Yes.

8       Q   And then there's a phrase that Mark said

9   that Steve Bradley surrounded himself with strong

10  pussy.

11      A   Uh-huh.

12      Q   Do you see that phrase?

13      A   Yes.

14      Q   I'm a little unclear what is meant

15  there.

16      A   I'm very unclear because I never heard

17  that comment until it was said to me.  I mean

18  either here, maybe at the OIG's office that he had

19  made this comment.  You know, I'm not sure what

20  they perceived that he meant by that.  You know, he

21  had, I was trying to think of the supervisors that

22  were in place under Steve when he first came there,

23  one of which was Cheryl Beckner who had been there,

24  I mean Cheryl was like Jodie's manager who had been

Page 43

State of Illinois                    )                    *Deborah Sullins v. Ill. Dept. of Public Aid*

                                     ) ss.

County of Sangamon          )                    USDC-Cent. Dist. Illinois - No. 04-3039

### AFFIDAVIT OF MICHAEL SANDIDGE

I, Michael Sandidge, being duly sworn, depose and state as follows:

1.    I am employed by the Illinois Department of Healthcare and Family

       Services, formerly Department of Public Aid, as the Medical

       Consultant Assistant II in Springfield, Illinois.

2.    From the year 1999 until March 2001, I worked under the

       supervision of Marvin Ross.

3.    During the year 2000, I would relate instances of vulgar language

       by co-worker Mark Scheff to supervisor Lenna DeGroot.

4.    As a result of these conversations, Ms. DeGroot did not forward the

       information to Internal Affairs or the EEO office, nor was an

       investigation ever undertaken.

FURTHER AFFIANT SAYETH NOT.

                                          Signature redacted pursuant to
                                          USDC-CDIL Adm.Proc. Rule II(I)(1)(f)


                                          MICHAEL SANDIDGE

SUBSCRIBED and SWORN to
before me this 31st  day
of October 2005.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

OFFICIAL SEAL
SHIRLEY BELL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/12/07

**EXHIBIT**

H

State of Illinois      )        *Deborah Sullins v. Ill. Dept. of Public Aid*
                           ) ss.
County of Sangamon  )        USDC-Cent. Dist. Illinois - No. 04-3039

### AFFIDAVIT OF JODIE EDMONDS

I, Jodie Edmonds, being duly sworn, depose and state as follows:

1.    I am employed by the Illinois Department of Healthcare and Family Services as the Manager of the Billing and Payment Section of the Bureau of Comprehensive Health Services in Springfield, Illinois.

2.    From 1998 through 2003, I worked as the public service administrator over the universal billing section.

3.    In the year 2000, Deborah Sullins worked in the universal billing section under my supervision.

4.    In October 2000, Ms. Sullins promoted to an Executive II position overseeing the State Renal Program, a position formerly held by Becky Ryan.

5.    Prior to Ms. Sullins taking on the duties of the Executive II position, I would hold meetings with the supervisors of programs under my supervision.

6.    Ms. Ryan was not always included in these meetings, as they often did not deal directly with the State Renal Program.

7.    This policy and procedure of not including the Executive II charged with overseeing the State Renal Program in all meetings dealing with other programs continued after Ms. Sullins assumed the duties in October, 2000.

FURTHER AFFIANT SAYETH NOT.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

SUBSCRIBED and SWORN to
before me this 31st day
of October 2005.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

OFFICIAL SEAL
SHAWN MAREE ANDREWS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/2008

**EXHIBIT**

I

7/13/05                    Sullins v. Illinois Department of Public Aid
Jodie Edmonds

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE CENTRAL DISTRICT OF ILLINOIS

3                    SPRINGFIELD DIVISION

4    DEBORAH R. SULLINS,

5              Plaintiff,

6       vs.                          No. 04-3039

7    THE ILLINOIS DEPARTMENT OF PUBLIC
     AID,
8
               Defendant.
9

10

11            THE DEPOSITION of JODIE EDMONDS, taken in

12   the above-entitled case before Julie A. Brown, a

13   Certified Shorthand Reporter of Christian County,

14   acting within and for the County of Sangamon, State

15   of Illinois, at 9:30 o'clock A.M., on July 13,

16   2005, at 415 South Seventh Street, Springfield,

17   Sangamon County, Illinois, pursuant to notice.

18

19

20

21

22
              Baldwin Reporting & Legal-Visual Services
23             Serving Illinois, Indiana & Missouri
             24hrs (217)788-2835    Fax (217)788-2838
24                    1-800-248-2835

**EXHIBIT**

J

Page 1

7/13/05
Jodie Edmonds

Sullins v. Illinois Department of Public Aid

1                    S T I P U L A T I O N

2                It is stipulated and agreed, by and
    between the parties hereto, through their
3   attorneys, that the deposition of JODIE EDMONDS may
    be taken before Julie A. Brown, a Certified
4   Shorthand Reporter, upon oral interrogatories, on
    the 13th of July A.D., 2005, at the instance of the
5   Plaintiff at the hour of 9:30 o'clock A.M., 415
    South Seventh Street, Springfield, Sangamon County,
6   Illinois;

7                That the oral interrogatories and the
    answers of the witness may be taken down in
8   shorthand by the Reporter and afterwards
    transcribed;

9
                That all requirements of the Federal
10  Rules of Civil Procedure and the Rules of the
    Supreme Court as to dedimus, are expressly waived;

11
                That any objections as to competency,
12  materiality or relevancy are hereby reserved, but
    any objection as to the form of question is waived
13  unless specifically noted;

14                That the deposition, or any parts thereof
    may be used for any purpose for which depositions
15  are competent, by any of the parties hereto,
    without foundation proof;

16
                That any party hereto may be furnished
17  copies of the deposition at his or her own expense.

18

19

20

21

22

23

24

                            Page 4

7/13/05                     Sullins v. Illinois Department of Public Aid
Jodie Edmonds

```
1        Q     Okay.

2        A     Yeah.  She worked under me, but not

3    directly for me until she became the Executive II.

4        Q     Okay.  While she worked under Lenna--

5        A     Uh-huh.

6        Q     Am I pronouncing her name correctly?

7        A     Lenna.

8        Q     Lenna.  Were you in a position where you

9    could assess or evaluate how good of an employee

10   she is, Debbie was?

11       A     Yes.  I mean like I said, she didn't

12   report directly to me, but I interact very closely

13   with Lenna and Marvin both and yes, she was a good

14   employee.  I mean she knew her job and she did it

15   well, but there was a period of time that that kind

16   of changed and--

17       Q     When did that change?

18       A     I don't remember the dates.  It was when

19   she started having personal issues.  She had--

20       Q     Was that before or after she became an

21   Executive I?

22       A     That was before.  Right before.  I don't

23   remember the date, but.

24       Q     And could you describe for me how she
```

Page 21



1      A    He always wore that coat though.   It's

2   not a new coat.   It wasn't a new coat.

3      Q    If other individuals disagreed with you

4   that worked around him every day, would they be

5   lying?

6      A    I'm not going to say they'd be lying.

7   I'm not going to call anybody a liar.

8      Q  .  Would you say they'd be mistaken?

9      A    I don't know.

10      Q    Did you see Mark Scheff every workday?

11      A    No.

12      Q    Did you see him enter the building and

13   leaving the building?

14      A    No.

15   .   Q    Do you know what type of coats he

16   normally wore to work prior to October of 2000?

17      A    No.

18      Q    Would you agree with me that the

19   information that was contained in the statement you

20   just read into the record was based upon what

21   others told you?

22      A    Yes.   Yes.

23      Q    With the exception I think you claim that

24   Debbie Sullins never verbalized to you complaints

Page 95

ILLINOIS DEPARTMENT OF PUBLIC AID

Office of Inspector General
Bureau of Internal Affairs
2040 Timberbrooke Drive
Springfield, Illinois 62702
(217) 782-1516

### REFERRAL OF ALLEGED EMPLOYEE MISCONDUCT

SUBJECT'S NAME:  __Mark T. Scheff__

SUBJECT'S TITLE:  __Medical Assistant Consultant II__

SUBJECT'S OFFICE LOCATION:   __Bloom Building__

SUMMARY OF COMPLAINT:

Medical Assistant Consultant (MAC) II Mary Thallman reported that on October 13, 2000 MAC II Mark T. Scheff made a comment in her (and MAC II James Schuh) office which was sexual in nature. Thallman said this was not the first time Scheff has made sexual comments in the work place and noted she was tired of it. Thallman relayed Scheff has, in the past three months, made a sexual comment about a gay male supervisor, complained only females (vaginas) got promoted and not males (penis), Scheff staff of a tree he landscaped, in his yard, which resembled a penis, made derogatory comments about a co-workers recent loss of her husband to suicide and talked about his septic tank getting serviced. Thallman noted her complaints/concerns in writing at my request (see attached).

(Attach Additional Sheets, If Needed)

WHERE DID THIS HAPPEN?  __Bloom Building__

WHEN DID THIS HAPPEN?   __October 13, 2000, 8:15a-8:30a__

WHO ELSE KNOWS THIS?   __NA__

Have you reported this to anyone else? Who?   __NA__

Complainant's Name: __Mary Thallman__

Complainant's Address:  __Bloom Building__

Telephone Number:  __2-5565__          Taken By:  __Laura R. Whetstone__

Date:       __October 13, 2000, 1:58p__

Telephone Number:  __( ) 4-8594__

DPA 3103 (R-6-97)



10/16/00

**EXHIBIT**

K

10/13/00 - 8:14 am

Mark Schiff came into my + Jim Schuh's office
and began relating to us that he had read
the statement of the woman his brother had
allegedly sexually assaulted. He proceeded
to describe in great detail of what the
woman said his brother did to her.
Comments included "he stuck his penis/finger
in her and left it for about 1 minute."
"You know Jim, when I stick my penis/finger
in my old lady I don't let it lay there
for a minute. I immediately start stroking
her with it.".

because I was
disgusted by his
comment & wanted to leave. I left the room at that point. After
Mark left our office Jim came down to
Velva's office to let me know it was safe to
return.

During the lunch hour he sat at my table (I
was alone) and repeated the above story. I
told him I had already heard this but he
continued and added the information that
the police were supposed to swab his brother's
fingers for vaginal fluids but they forgot

001557

On 10-10-00 we had a short staff meeting in Marvin Ross's office. In attendance were Marvin, Leona DeGroot, Joe Roberts, Mike Standidge, Jody Edmunds, Mark Scheff and myself.

Shortly after Mark came into the room ~~the~~ proceeded to tell everyone that over the weekend he had a man come out to "suck" out his septic tank. ~~I~~ He said the man asked him if he had some women living with him. Mark said "Yes I do. Why." He said (this was after he paused a few seconds which made everyone wonder what was going to be said next.) that the man said he could tell ~~us~~ by the amount of toilet paper that was in the tank. That women always use more toilet paper then men. We thought he was going to mention feminine hygiene products.

Throughout the summer he constantly talked about how he carved one of his trees into the shape of a penis and that his neighbors weren't too happy about it. He talked about this to me and any one else who was around on numerous occasions.

001558

He constantly makes derogatory remarks about peoples sexual orientation. A good example of that was yesterday (10-12-00) he came into my office and commented that he supposed the reason Marvin Ross couldn't come into work that day was because since the day before was Marvin's birthday he "probably got too much beef in the rear." (penis/rectal) I interpreted this to mean sexual activity. I was offended + outraged

On 10-2-00 we were called in to Marvin's office. The purpose of that meeting was to inform the staff that P.K's husband had killed himself the night before. In attendance were: Teresa, Marvin, Jody, Pam, Jim, Joe, Mike, Velvo, Marcia + myself. Mark's first comment was "Where did he have the gun? Did he swallow it or aim between the eyes." He then proceded to explain different scenarios on how the bullet might have taken its course and that depending on how much damage it did if they would be able "show him." I left while he was still talking. I believe I said "I've heard enough of this shit." Several days after this he was heard in the break room on 1st floor by Jim Scheih

MT 10/13/00

expressing his opion that PK killed her husband. He also commented often the night of visitation that he told his girlfriend Elaine that she didn't look like any grieving widow to him.

There are many other incidents - occurring almost daily - that I cint recall at this moment. Most of us who work around him have pretty much learned to tune him out as much as we can.

He did make the comment to Deb Sullins that the only reason she got her promotion was because she has a vagina and not a penis. (Deb told me this this morning.) Because I shared with her the events of this morning.

All of these comments were unsolicited.

Mary Thallman   10/13/00   2:30 pm

001560